STATE UPON. THE RELATION OF MARIO HERNANDEZ v. HUGH CULBREATH, as Sheriff of Hillsborough County, Florida, et al.

11 So. (2nd) 569                                    January Term, 1943
February 3, 1943                                              En Banc

Wm. C. Pierce, for appellant.

J. Tom Watson, Attorney General, Woodrow M. Melvin, Assistant Attorney General, and J. Rex Farrior, State Attorney, for appellees.

PER CURIAM:

This cause coming before us on appeal from judgment of remand in *habeas corpus* proceedings wherein petitioner sought release on bail and the court having considered the record in the light of argument of counsel, for the appellant and for the State, our conclusion is that the proof fails to show that it is evident, or the presumption great that petitioner is guilty of murder in the first degree.

It is, therefore, the judgment of the Court that petitioner be released from custody on good and sufficient appearance bail bond in the sum of $5,000.00 to be approved by the Clerk of the Circuit Court of Hillsborough County.

So ordered nunc pro tunc as of February 2, 1943.

BUFORD, C. J., TERRELL, BROWN, CHAPMAN and ADAMS, JJ., concur.

THOMAS and SEBRING, JJ., dissent.

IN RE: ADVISORY OPINION TO GOVERNOR

11 So. (2nd) 580                                    January Term, 1943
February 4, 1943                                             En Banc

PER CURIAM:

## SUPREME COURT OF FLORIDA
### Rivers Buford, Chief Justice
### Tallahassee

| Division A. | February 2, 1943 | Division B. |
|---|---|---|
| Justices: | | Justices: |
| Glenn Terrell | | Armstead Brown |
| Roy H. Chapman | | Elwyn Thomas |
| Alto Adams | | Harold R. Sebring |
| Guyte P. McCord, Clerk | | R. S. Williams, Marshal |

Honorable Spessard L. Holland
Tallahassee, Florida

Dear Sir:

We have your request of January 26, 1943, for our opinion affecting your executive powers and duties as follows:

"January 26, 1943.

"To The Honorable, The Chief Justice,
 and Justices of the Supreme Court of
 the State of Florida

"Gentlemen:

Section 16 of Article IX, an amendment to the Constitution of this State, adopted at the general election on Novem-

ber 3, 1942, effective January 1, 1943, provides that the Governor, as Chairman, the State Treasurer and the State Comptroller constitute a body corporate, known as the State Board of Administration, which has succeeded to all the power, control and authority of the statutory Board of Administration, (created by Chapter 14486, Acts of 1929) and which has, in addition to such further powers as may be conferred upon it by law, the management, control and supervision of the proceeds of certain tax funds (2c per gallon of the total tax levied by State law upon gasoline and other like products of petroleum collected beginning January 1, 1943) and of all moneys and other assets which, on the effective date of said amendment, were or should become applicable to certain bonds of the several counties and special road and bridge districts of this State issued prior to July 1, 1931, for road and bridge purposes.

"The amendment also provides that said Board shall have all the powers, except the power to levy ad valorem taxes, of Boards of County Commissioners and Bond Trustees and other authorities with regard to such bonds, the power to issue refunding bonds for any such outstanding bonds, to issue tax anticipation certificates, to invest and reinvest the funds in its control in certain securities, and the power to make and enforce all rules and regulations necessary to the full exercise of the powers granted by said amendment. The said Board is also, by said amendment, charged with certain other duties as to the order of application of the funds coming into its control and the distribution of any surplus therein, not necessary to be enumerated here.

"With regard to the two cents tax above mentioned, the amendment provides that the same, as collected, shall be placed monthly in the State Roads Distribution Fund in the State treasury, and divided into three equal parts and distributed monthly among the several counties according to a prescribed formula, and that such funds, so distributed among the counties, shall be administered by the State Board of Administration, as in the amendment provided.

"A difference of opinion has arisen among the members of the Board, as to its powers and duties and those of its

constituent members, with reference to the handling and disbursement of the funds and assets inherited by it from the statutory Board of Administration, and those coming into its control from the tax provided for by said amendment, the Comptroller expressing the conviction, as I understand it, though more fully set forth in the memorandum attached hereto at his request, that all inherited funds and assets to the credit of the several counties and other taxing units held on January 1, 1943, by the State Treasurer as County Treasurer Ex Officio, should be transferred to the State Treasury as such, although to remain to the credit of the several counties and taxing units, and that none of such funds shall be withdrawn or disbursed save and except upon State warrant signed by the Comptroller and countersigned by the Governor, in the exercise of their powers and duties as Comptroller and as Governor, respectively, as under Section 24, of Article IV of the Constitution. The State Treasurer and I hold the conviction that the said amendment constitutes the three constitutional officers named to its membership into a body corporate, with full power and authority to deal with all such funds and assets belonging to the several counties and taxing units, in such manner and by such methods as the Board itself may adopt by virtue of its power to make and enforce all rules and regulations necessary to the full exercise of the powers granted by said amendment, independently of the constitutional powers and duties vested in and imposed upon the members of said Board as Governor, as State Treasurer, and as State Comptroller, respectively.

"I. As to Said Inherited Funds and Assets:

"Since, therefore, if the position of the Comptroller is correct, I, as Governor, will be required to countersign a State warrant for every disbursement of said Board out of such inherited funds, and will have the power, in my capacity as Governor, to refuse to countersign any such warrant, thereby defeating what may be the will of the said Board, a Separate and distinct entity, I have the honor to request your written opinion, as I am permitted to do under Section 13 of Article IV of the Constitution as to the interpretation of said

Section 16 of Article IX of the Constitution, touching my executive powers and duties, particularly as to whether I, in my capacity as Governor, am constitutionally required to countersign a State warrant for every disbursement by said Board out of said inherited funds and assets, which funds and assets, as the State Treasurer and I believe, are not now in the State treasury as such, and we likewise believe that there is, under the said amendment, no requirement or authority for the transfer of the same into the State treasury.

"II.  As to Proceeds of Two Cents Gas Tax After December 31, 1942.

"As to the current and continuing proceeds of the tax provided for by said amendment, beginning with January 1, 1943, the point of difference between the Comptroller on the one hand, and the State Treasurer and me on the other hand, is that he, the Comptroller, holds the conviction, as I understand, although more fully stated in the memorandum hereto attached at his request, that all such proceeds, although distributed among the several counties, as provided for in said amendment, remain State funds, and may not be withdrawn or disbursed except upon State warrant signed by the Comptroller and countersigned by the Governor, as under Section 24 of Article IV of the Constitution while the State Treasurer and I hold the conviction that such proceeds, when distributed monthly among the several counties as required by the amendment by State warrant signed by the Comptroller and countersigned by the Governor, cease to be State funds as such, and occupy the same status as the funds and assets inherited from the statutory Board of Administration, hereinbefore mentioned, and are not such funds as may be withdrawn or disbursed only upon State warrant, but that they are subject to such handling, by way of such withdrawal and disbursement, as the said Board may determine in pursuance of its power to make and enforce all rules and regulations necessary to the full exercise of the powers granted by said amendment.

"Under the circumstances, therefore, I have the honor to request your further written opinion as to the interpretation of said amendment touching my executive powers and duties

with regard to the proceeds of said tax, particularly as to whether I, in my capacity as Governor, am constitutionally required to countersign a State warrant for every disbursement by said Board out of the proceeds of said tax, or whether my constitutional duty in such regard will have been fully performed by my countersigning State warrants monthly, effecting the distribution of said funds among the several counties to be thereafter withdrawn or disbursed by said Board in such manner and by such methods as it may prescribe by virtue of its power to make and enforce all rules and regulations necessary to the full exercise of the powers granted by the amendment.

> With great respect,
> SPESSARD L. HOLLAND,
> Governor."

Epitomized, you request the opinion of this Court under Section 13 of Article IV of the Constitution affecting your executive powers and duties as to countersigning warrants for the distribution and disbursement of funds inherited by the Board of Administration on January 1, 1943, including those funds coming into its hands after December 31, 1942, under Section 16 of Article IX of the Constitution.

As to the funds inherited by the present Board of Administration from the former Board of Administration as of January 1, 1943, you are advised that these funds pass to the present Board in their status as of the date of their receipt. If they are still in the State Roads Distribution Fund, it is the duty of the Board of Administration to distribute them to the counties in the manner provided by Section 16 of Article IX of the Constitution. Since these funds go into the treasury as State funds, they should be distributed to the counties by warrant drawn by the Comptroller and countersigned by the Governor as provided by Section 24, Article IV of the Constitution. Such of these funds as were distributed to the counties by the former Board of Administration prior to January 1, 1943, may be disbursed by the present Board of Administration in any manner that it may deem wise to prescribe, but it is not the duty of the Governor under the

362

Constitution supra to countersign the warrants or checks issued by order of the Board of Administration in payment of obligations payable from such funds.

As to the funds coming into the hands of the Board of Administration on and after January 1, 1943, from proceeds of the two cent gas tax as provided by Section 16 of Article IX of the Constitution, you are advised that distribution should be made to the counties in the same manner that funds inherited from the former Board of Administration are distributed, that is to say, by warrant of the Comptroller countersigned by the Governor. After distribution is made to the counties, these funds are then subject to disbursement by the Board of Administration in the same manner that funds in the same status inherited from the former Board of Administration are distributed.

Respectfully submitted,

/s/ Rivers Buford
Chief Justice
/s/ Glenn Terrell
/s/ Armstead Brown
/s/ Roy H. Chapman
/s/ Elwyn Thomas
/s/ Alto Adams
/s/ Harold L. Sebring
Justices.